# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2058

_____

Chad Richardson, Individually, and as Parents and Next Friends of L; Tonya
Richardson, Individually, and as Parents and Next Friends of L

*Plaintiffs - Appellants*

v.

Omaha School District; Jacob Sherwood, Superintendent; Amanda Green,
Principal; Dawn Dillon, Teacher

*Defendants - Appellees*

------------------------------

Council of Parent Attorneys and Advocates, Inc.

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: March 11, 2020
Filed: April 27, 2020

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Chad and Tonya Richardson (collectively, "the Richardsons") appeal the district court's[1] grant of Omaha School District's motion to dismiss in part and motion for summary judgment. We affirm.

## I.

The Richardsons filed an administrative complaint against the school district with the Arkansas Department of Education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The Richardsons claimed that their child, "L," was denied his right to a free appropriate public education ("FAPE"). *See* 20 U.S.C. § 1401(9). Specifically, they alleged that the school district (1) failed to conduct necessary evaluations of L; (2) failed to develop and implement an individualized education plan ("IEP") for L; (3) failed to ensure that L was not bullied by peers and teachers; and (4) failed to educate L in the least restrictive environment possible. On April 14, 2017, the hearing officer found in favor of the Richardsons on their first two allegations but found in favor of the school district on the Richardsons' third and fourth allegations.

The Richardsons subsequently filed a complaint in the United States District Court for the Western District of Arkansas. In Count One, they sought an award of attorneys' fees as the prevailing party of the administrative-level IDEA hearing on their first two allegations. *See* 20 U.S.C. § 1415(i)(3)(B)-(C). The school district filed a motion to dismiss Count One, and the district court granted the motion.[2]

Counts Two and Three of the complaint alleged discrimination against L in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

[2]In their motion, the school district also moved to dismiss Counts Four through Nine of the complaint, which the district court granted. The Richardsons do not appeal that ruling.

-2-

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165. The school district filed a motion for summary judgment as to those counts, and the district court granted the motion. The Richardsons appeal.

## II.

### A.

The Richardsons first argue that the district court erred in granting the school district's motion to dismiss Count One because the district court determined the claim for attorneys' fees was time barred. We review *de novo* the district court's dismissal of the Richardsons' claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Minter v. Bartruff*, 939 F.3d 925, 926 (8th Cir. 2019). To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018). We also review *de novo* "the district court's decision to borrow a particular state statute of limitations." *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000).

The IDEA includes a default ninety-day statute of limitations for merits actions after the administrative decision if the relevant state has no explicit time limitation, 20 U.S.C. § 1415(i)(2)(B), but it does not include a statute of limitations for a prevailing party to file a cause of action for attorneys' fees, *see* § 1415(i)(3). The parties dispute what statute of limitations applies. "When a federal law has no statute of limitations, courts may borrow the most closely analogous state statute of limitations, unless doing so would frustrate the policy embodied in the federal law." *Birmingham*, 220 F.3d at 854. "We have not previously determined what state statute is most analogous in this situation . . . ." *Brittany O. v. Bentonville Sch. Dist.*, 683 F. App'x 556, 557-58 (8th Cir. 2017) (per curiam) (declining to reach the issue).

The district court borrowed the ninety-day statute of limitations for merits actions of the administrative decision from Arkansas Code section 6-41-216(g), a provision of the Children with Disabilities Act, *see* Ark. Code § 6-41-201, Arkansas's statutory framework for IDEA compliance. *See* Ark. Code § 6-41-202. If the ninety-day statute of limitations applies, the Richardsons do not contest that the district court properly dismissed their claims.

The Richardsons argue instead that we should borrow a different statute of limitations. They first point to the four-year statute of limitations in 28 U.S.C. § 1658(a). That statute provides a default four-year statute of limitations for "civil action[s] arising under an Act of Congress" passed after § 1658 was enacted in December 1990. The Richardsons concede that they did not raise this argument before the district court.

Even if the Richardsons did not waive this argument, *but see Cromeans v. Morgan Keegan & Co.*, 859 F.3d 558, 568 n.5 (8th Cir. 2017), it nevertheless fails. As the Richardsons concede, the IDEA provided for a prevailing parent's right to attorneys' fees in 1986, years before § 1658 was enacted. *See* Handicapped Children's Protection Act of 1986 § 2, Pub. L. No. 99-372, 100 Stat. 796. Thus, § 1658's default four-year statute of limitations does not apply.

The Richardsons argue that this reading leads to absurd results because the IDEA did not provide a prevailing school district with a cause of action for attorneys' fees until 2004. In other words, school districts would benefit from the four-year default when seeking an award for attorneys' fees, but parents would not benefit from the same default. Be that as it may, the text of § 1658 is clear. *See D.G. ex rel. LaNisha T. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 319 (5th Cir. 2015) ("If the cause of action for attorneys' fees was created after December 1, 1990, the answer would be four years. . . . But . . . the cause of action for attorney's fees under the IDEA was first created in 1986." (internal quotation marks and brackets omitted)).

Next, the Richardsons argue we should borrow Arkansas's three-year statute of limitations for personal injury actions. *See* Ark. Code § 16-56-105. This argument is not without support. Both the Ninth and Eleventh Circuits have borrowed similar, years-long statutes of limitations for a prevailing party's attorneys' fees claim under the IDEA. *See Meridian Joint Sch. Dist. No. 2. v. D.A.*, 792 F.3d 1054, 1064 (9th Cir. 2015); *Zipperer ex rel. Zipperer v. Sch. Bd. of Seminole Cty.*, 111 F.3d 847, 852 & n.9 (11th Cir. 1997).

The Seventh Circuit explained the difficulty in identifying an analogous statute of limitations: "an action for attorneys' fees presents a unique problem in that it may arguably be characterized as either an independent cause of action . . . or as ancillary to the judicial review of the administrative decision." *Powers v. Ind. Dep't of Educ., Div. of Special Educ.*, 61 F.3d 552, 555 (7th Cir. 1995). The Eleventh Circuit noted this difficulty and reasoned that the IDEA "provides two distinguishable causes of action": one for the appeal of a substantive administrative decision and "an independent claim for attorneys' fees." *Zipperer*, 111 F.3d at 851. It rejected the argument that a claim for attorneys' fees "is analogous to the appeal of an administrative hearing" and applied a four-year statute of limitations provided for "actions founded on statutory liability." *Id*. at 850-51. It reasoned that a longer period would "encourage the involvement of parents, as represented by attorneys, in securing appropriate public educations for their children." *Id*. at 852. It also reasoned that "the resolution of claims for attorneys' fees is less urgent." *Id*. at 851.

Following the Eleventh Circuit's reasoning, the Ninth Circuit concluded that "a request for attorneys' fees under the IDEA is more analogous to an independent claim than an ancillary proceeding." *Meridian Joint Sch. Dist. No. 2*, 792 F.3d at 1063-64. It based its conclusion on the fact that the hearing officer may not award the attorneys' fees. *Id*. at 1064. It noted also that "the adoption of the state law limitations period for judicial review of administrative agency decisions" might mean that the party who prevailed at the administrative hearing would have to determine whether to file an action for attorneys' fees before the party that lost at

the administrative hearing decided whether to seek judicial review of the merits of the decision. *Id.* It therefore looked to a three-year statute of limitations for statutory liability actions and a two-year statute of limitations for personal injury actions, declining to decide which applied because it determined that both statutes of limitations were met. *Id*. at 1064 n.9.

By contrast, the Seventh Circuit determined that an action for attorneys' fees is a claim ancillary to the underlying dispute. *Powers*, 61 F.3d at 556. It relied on one of its previous decisions, which noted that "[i]n awarding attorneys' fees, the district court must review not only proceedings in its own court but also proceedings in a state administrative environment, and that a return to such a quagmire months after adjudication of the merits would result in a needless expenditure of judicial energy." *Id*. (alteration in original and internal quotation marks omitted). It thus looked for a statute of limitations with "some relevance to the administration of the IDEA itself" and ultimately applied the state's thirty-day limitations period for seeking judicial review of administrative decisions in special education matters. *Id*. at 556-58.

The Sixth Circuit agreed with the Seventh Circuit, reasoning that because the only reason a prevailing parent would have "entree to the court is the failure to recover fees incurred in the administrative proceeding, the statutory authorization for the court to award attorney fees . . . must, in this situation, be an authorization for the court to award attorney fees in the administrative proceeding itself." *King ex rel. King v. Floyd Cty. Bd. of Educ.*, 228 F.3d 622, 625-26 (6th Cir. 2000). The Sixth Circuit explained further, "[i]t is difficult for us to conceive of a legislature intentionally authorizing the filing of a fee application up to five years after termination of the proceeding to which the application relates." *Id*. at 626. It applied the state's thirty-day statute of limitations period for an appeal from an administrative order. *Id*. at 624, 627.

We are persuaded by the reasoning in the Sixth and Seventh Circuit decisions. As the D.C. Circuit reasoned when addressing a different question, "a prevailing

party's fee request [is] part of the same 'action' as the underlying educational dispute." *Kaseman v. District of Columbia*, 444 F.3d 637, 641 (D.C. Cir. 2006). It explained that "[a] fee request is . . . not a direct appeal of a decision made by the agency at the administrative hearing, as it does not call into question the child's evaluation or placement." *Id.* at 642. It continued, "[y]et the parent's entitlement to fees arises out of the same controversy and depends entirely on the administrative hearing for its existence." *Id.* In other words, the fee proceeding is ancillary and inherently related to the underlying dispute.

Following this logic, we agree with the district court's decision to borrow the ninety-day statute of limitations for merits actions from Arkansas Code section 6-41-216(g), Arkansas's statutory framework for IDEA compliance, because the claim for attorneys' fees is ancillary to judicial review of the administrative decision. *See C.M. ex rel. J.M. v. Bd. of Educ. of Henderson Cty.*, 241 F.3d 374, 380 (4th Cir. 2001) ("Logic virtually compels the conclusion that a state special education statute, specifically enacted to comply with the IDEA . . . constitutes the state statute most analogous to the IDEA."). Doing so does not frustrate the policy embedded in the federal law, *see Birmingham*, 220 F.3d at 854, particularly in our circuit, where we have held that the statute of limitations period for a prevailing party seeking attorneys' fees does not begin to run "until the 90-day period [expires] for an aggrieved party to challenge the IDEA administrative decision by filing a complaint in court." *Brittany O.*, 683 F. App'x at 558. This means that the Ninth Circuit's concern that the prevailing party would have to determine whether to file an action for attorneys' fees before knowing whether the losing party would seek judicial review of the administrative decision is likely not an issue in our circuit.

Further, as the Sixth and Seventh Circuits reasoned, when attorneys' fees are at issue, parents of the aggrieved student have already hired a lawyer, so the shorter period does "not run the risk of hurting vulnerable unrepresented parents." *King*, 228 F.3d at 627; *Powers*, 61 F.3d at 558. The parents, school district, and attorneys have an interest "in the expeditious resolution" of the attorneys' fees issue. *Dell v. Bd. of Educ., Twp. High Sch. Dist. 113*, 32 F.3d 1053, 1063 (7th Cir. 1994).

"Moreover, by the end of the administrative proceedings and any subsequent judicial review, the parties ought to have a good idea of the extent and quality of representation, and long-term deferral of the issue simply serves no salutary purpose." *Id*. at 1063-64.

The district court thus did not err in applying the ninety-day statute of limitations, and Count One was properly dismissed because the Richardsons' district court complaint was filed after the ninety-day limit.[3]

B.

Second, the Richardsons argue the district court erred in granting the school district's motion for summary judgment. We review a grant of summary judgment "*de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Counts Two and Three of the Richardsons' complaint are raised under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. § 12131-12165. "Where alleged ADA and § 504 violations are based on educational

_____

[3]The Richardsons argue that our decision in *Birmingham* supports their position. 220 F.3d at 850. In that case, we applied Arkansas's three-year personal injury statute of limitations to a merits action after an adverse decision in an IDEA hearing. *Id.* at 856. We reasoned that a three-year statute of limitations is consistent with IDEA policies but that a thirty-day period was not. *Id*. at 855-56. Since that time, Congress amended the IDEA to provide a default ninety-day period for merits actions of an adverse decision, Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, undercutting our reasoning that a shorter period is inconsistent with the IDEA. And *Birmingham* did not consider the appropriate statute of limitations for a claim for attorneys' fees, nor did it consider Arkansas's Children with Disabilities Act.

services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Birmingham*, 220 F.3d at 856.

"In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct departed substantially from accepted professional judgment, practice or standards so as to demonstrate that the persons responsible actually did not base the decision on such a judgment." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (internal quotation marks and brackets omitted). Bad faith or gross misjudgment requires more than "mere non-compliance with the applicable federal statutes." *Id.* The non-compliance "must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *Id.*

In its motion for summary judgment, the school district argued that there is no genuine issue of material fact about whether it acted in bad faith or with gross misjudgment with respect to the Richardsons' claim that L was the victim of peer and teacher bullying. The Richardsons argued before the district court that the school district failed to meet its initial burden of proof for summary judgment under Rule 56. They contended in part that Counts Two and Three were also based on the school district's failure to reevaluate L comprehensively and to provide an IEP in addition to their claims that L was subject to peer and teacher bullying. They pointed out that the school district's motion only addressed the bullying arguments, not the other bases they claim to have alleged in Counts Two and Three.

The district court found that the school district had met its initial burden, and we agree. The moving party "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But Rule 56 contains no express or implied requirement "that the

moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id*.

In its statement of undisputed facts in support of its summary judgment motion, the school district stated that the factual allegations underlying Counts Two and Three "are indistinct from the factual allegations regarding bullying that [the Richardsons] pursued at the Hearing." It explained that the hearing officer ultimately rejected the arguments and concluded that the school district complied with the IDEA with respect to the allegations of peer and teacher bullying. It explained further that the Richardsons had "disclosed in discovery no evidence to establish what are accepted professional practices or standards applicable to educators' investigations of or responses to alleged bullying," nor did they provide evidence that the school district substantially departed from such standards. In its brief in support of its motion for summary judgment, the school district argued that it would be "legally untenable" to conclude that the school district acted in bad faith or with gross misjudgment when a hearing officer concluded that they acted in a manner that fully complied with the IDEA.

The Richardsons emphasize on appeal, as they did before the district court, that the school district's motion said nothing about their claims regarding the failure to reevaluate L and to provide an IEP, meaning the school district did not meet its burden under Rule 56. They highlight the fact that the district court considered these claims in its analysis of Counts Two and Three.

But the district court *assumed*, "despite what the Complaint may focus on," that those claims were included as part of Counts Two and Three. Reviewing *de novo*, we are not obligated to adopt such an assumption, and we refuse to do so. The complaint does not support the Richardsons' position that Counts Two and Three are based on an alleged failure to reevaluate L or an alleged failure to provide an IEP. The only hint of these theories is passing statements that were not pleaded as the factual basis for the legal claim and are insufficient to meet our pleading standards. *See Adams v. Am. Family Mut. Ins.*, 813 F.3d 1151, 1154 (8th Cir. 2016)

-10-

("A theory of liability that is not alleged or even suggested in the complaint would not put a defendant on fair notice and should be dismissed."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard." *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016); *see also Katsev v. Coleman*, 530 F.2d 176, 179-80 (8th Cir. 1976) (explaining that the district court was not required to consider a new legal theory raised at the summary judgment stage that was not included in the complaint and that the claim could not be asserted on appeal). We thus conclude that these alternative theories of liability under section 504 and the ADA were not adequately pleaded, so the district court need not have addressed them, and we do not do so now.

The Richardsons nevertheless argue that even if the school district met its burden, there is a genuine dispute of material fact with respect to whether the school district acted in bad faith or with gross misjudgment such that the district court should not have granted the motion for summary judgment. But their brief on appeal cites little, if any, evidence about bullying, instead focusing on their failure to reevaluate and to provide an IEP claims. "We cannot tell whether the district court erred in a ruling if [the plaintiff] does not direct us to a place in the record where we can find it, and so we consider only those contentions that include appropriate citations." *Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) (alteration in original).

Although they make nearly no argument on appeal that there is a genuine dispute of material fact about whether L was denied FAPE due to bullying, a review of the record confirms the district court's decision. The statement of facts in opposition to the motion for summary judgment that the Richardsons submitted to the district court includes no facts about bullying. It does not even include the words bully or bullying.

Further, the Richardsons do not contest that all the facts about their bullying claims were presented at the administrative hearing. At that hearing, the hearing officer considered evidence about four incidents of alleged bullying. The first incident involved an allegation that a peer was bullying L. When the school district administrators learned of the event, they called the Richardsons to retrieve L and informed the Richardsons that a teacher had disciplined the child at fault. The second incident involved L reporting that he felt bullied when another student told him to put his name on a class paper. The school administration informed the relevant teacher of the incident. The third incident involved an allegation that L's keyboarding teacher told L to stop moving in his seat when he was experiencing tics. The teacher admitted to L's father that she had told L to stop moving and that she did not know he experienced tics because of Autism Spectrum Disorder. The fourth incident involved allegations that L was bullied in a class where the teacher was nonresponsive to his requests for help, instead telling him to sit in a bean bag chair. The school district administration investigated the situation. The hearing officer concluded that only one incident *might* constitute bullying and that the school district did not deny L FAPE based on the alleged bullying incidents.

We agree with the district court that, when viewed in the light most favorable to the Richardsons, none of the evidence of bullying creates a genuine dispute of material fact about whether the school district acted in bad faith or with gross misjudgment, as required by both section 504 and the ADA. *See B.M. ex rel. Miller*, 732 F.3d at 887 (explaining that § 504 and the ADA do not create general tort liability for educational malpractice and that statutory noncompliance must "deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent"). The district court therefore properly granted summary judgment on Counts Two and Three.

## III.

For the foregoing reasons, we affirm.

_____